IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAIʻI, DEPARTMENT OF HUMAN SERVICES, | ) ) ) ) | CIVIL NO. 08-00044 DAE-BMK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| UNITED STATES DEPARTMENT OF EDUCATION, REHABILITATION SERVICES ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) ) | |

ORDER REVERSING IN PART AND AFFIRMING IN PART
ADMINISTRATIVE ARBITRATION PANEL'S DECISION AND
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT

On November 7, 2008, the Court heard Defendant's Motion to

Dismiss and held oral argument on Plaintiff's appeal of the administrative

arbitration panel's decision.  Susan R. Kern, Deputy Attorney General, appeared at

the hearing on behalf of Plaintiff; Caroline L. Wolverton, U.S. Department of

Justice Attorney, and Harry Yee, Assistant United States Attorney, appeared at the

hearing on behalf of Defendant.  Evan R. Shirley, Esq., appeared on behalf of

Amicus the Ad Hoc Committee of Hawaii Blind Vendors Concerned about the

Randolph-Sheppard Program.  After reviewing the motion, the supporting and

opposing memoranda, the administrative appeal and record below, the Court

REVERSES IN PART AND AFFIRMS IN PART the administrative arbitration

panel's decision.  This Court reverses the administrative arbitration panel's

decision that the Randolph-Sheppard Act did not apply to the property at issue.

This Court affirms the administrative arbitration panel's decision that the

arbitration panel does not have authority to award damages against the Navy.

Because the motion to dismiss raises the same argument and issues as the

administrative appeal, this Court DENIES Defendant's Motion to Dismiss AS

MOOT.

<u>BACKGROUND</u>

The issues in this case are whether the United States Navy ("Navy")

violated the Randolph-Sheppard Act, 20 U.S.C. §§ 107 through 107f (the "RSA"),

by not requiring private companies that lease its land to give priority to blind

vending facilities, and whether the administrative arbitration panel has the

authority to award damages against the Navy.

In general, the RSA

establishes a cooperative federal-state program that
provides employment opportunities for the blind. The
Act grants priority to blind persons who desire to operate
vending facilities on federal property.  At the federal
level, the Secretary of Education is charged with the

> overall responsibility for administering the Act.  At the
> state level, state licensing agencies ("SLAs") designated
> by the Secretary of Education implement the program.

Premo v. Martin, 119 F.3d 764, 766-67 (9th Cir. 1997).

I.    Factual Background

The Navy owns the real property located at the Pearl Harbor Naval

Base.  In 1999, Congress gave the Navy authority to lease its property located at

Ford Island that is not needed for Navy operations.  See 10 U.S.C. § 2814 ("The

Secretary of the Navy may lease to any public or private person or entity any real

property or personal property under the jurisdiction of the Secretary in the State of

Hawaii that the Secretary determines--(A) is not needed for current operations of

the Navy and all of the other armed forces; and (B) will promote the purpose of

this section.").

The Navy leased the following three parcels of property located

within the Naval Base to private entities: 1) Halawa Landing; 2) Ford Island

Commercial where the Pacific Aviation Museum is (the "PAM Property"); and 3)

the site of the USS Bowfin Museum (collectively, the "Leased Premises").

Halawa Landing was leased to Fluor Hawaii, LLC, which thereafter

assigned the lease to Ford Island Ventures, LLC.  In November 2004, Ford Island

Ventures issued a license agreement to the Pearl Harbor Visitor's Center, Inc.

3

("PHVC") for them to provide visitor services such as food, beverage, and bag storage. PHVC constructed a large white tent on the Halawa Landing property next to the primary parking lot used for the USS Arizona Memorial Complex ("Arizona Complex") , and it operated several food concessions and other visitor services in the tent (the "White Tent").

The Arizona Complex has two blind vendors, Mr. Clifford Chong and Mr. Brian Tamashiro, who operate a food stand at the entrance of the Arizona Complex pursuant to a concession grated by the National Park Service, which is the agency that operates the Arizona Complex. The blind vendors testified that by the time the visitors reached the Arizona Complex from the parking lot, they had already made purchases at the White Tent. The blind vendors believe that the White Tent gained $300,000 in profits that the blind vendors may otherwise have made. Effective April 30, 2007, the Halawa Landing lease was terminated, the PHVC licensing agreement also terminated, and the White Tent operation closed.

The PAM Property was an area of old and underutilized airplane hangars. The area was also leased to Fluor Hawaii, LLC, which thereafter assigned the lease to Ford Island Ventures. In 2006, Ford Island Ventures subleased a portion of the area to the Pacific Aviation Museum Pearl Harbor. The PAM

Property includes a café, the Lani Akea Café, which sells a variety of food and beverages.

In 1986, the Navy leased property near Halawa Landing to the Pacific Fleet Submarine Memorial Association for use as a submarine museum and related support facilities.  Inside the USS Bowfin Museum is a hot dog cart which sells hot dogs, sandwiches, snacks and beverages, and a shaded seating area for approximately 200 people.  There is no plan to expand these operations to include a commercial kitchen.

No Navy personnel are stationed on the Leased Premises and no federal employee works on or maintain the Leased Premises.

II.   <u>Procedural History</u>

Plaintiff State of Hawaii Department of Human Services has a branch, the Department of Vocational Rehabilitation and Services for the Blind, ("Plaintiff"), which is the SLA authorized to implement the provisions of the RSA, including issuing licenses to blind persons for operation of vending facilities and filing a complaint with the Secretary of Education when there is a dispute over wether a federal agency has complied with the RSA.  <u>See</u> 20 U. S.C. §§ 107a, 107b, 107d-1.

Plaintiff filed a Complaint with the Secretary of Education on February 6, 2006, alleging that the Navy violated the RSA and sought damages in the amount of lost profits suffered by the blind vendors who work at the entrance of the Arizona Complex due to loss of business because of sales made at the White Tent, and alleged violations of the RSA with respect to other portions of the Leased Premises.

After a hearing, on December 5, 2007, the arbitration panel appointed by the United States Department of Education issued its decision (the "Administrative Decision").  The arbitration panel consisted of three members, R. Charles Bocken, Joseph C. Luman, and Peter A. Nolan (the "Panel").  The Administrative Decision was signed by panel member Bocken.  Luman wrote a concurring opinion, and Nolan wrote a dissent.  The Panel found that "the RSA priority for blind vending facilities does not apply to Leased Premises, and did not apply to the Halawa Landing area."  (Administrative Decision at ¶ 17.) Specifically, the Panel held that because the Navy did not control Halawa Landing or the PAM Property, the RSA did not apply.  In addition, the Panel concluded that because no café was planned for the Bowfin Museum site, the RSA claims are moot.  The Panel also held that "it is not within the authority of the Panel to award damages against the Navy."  (Id. at ¶ 22.)

6

Plaintiff filed a complaint and appeal of the Administrative Decision in this Court on February 1, 2008.  Defendant filed a Motion to Dismiss, or in the Alternative for Summary Judgment on June 30, 2008.  (Doc. # 13.)  Plaintiff filed an opposition and its Opening Brief on July 30, 2008.  (Docs. ## 26, 27.)  The Ad Hoc Committee of Hawaii Blind Vendors Concerned about the Randolph-Sheppard Program filed an Amicus Brief is support of Plaintiff on August 25, 2008.  (Doc. # 46.)  Defendant filed an answering brief and reply in support of its motion to dismiss on September 9, 2008. (Doc. # 48.)  Plaintiff filed a reply brief on October 8, 2008.  (Doc. # 53.)  On October 8, 2008, the National Federation of the Blind and National Association of Blind Merchants filed an Amicus Curiae brief in support of Plaintiff.  (Doc. # 55.)

STANDARD OF REVIEW AND ISSUES ON APPEAL

The Panel had jurisdiction over the underlying case pursuant to 20 U.S.C. § 107d-1(b), and this Court has jurisdiction pursuant to 5 U.S.C. § 702, 28 U.S.C. § 1331, and 20 U.S.C. § 107d-2.  The appeal was timely filed.

I.      Standard of Review

Defendant seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Pursuant to the Federal Rules of Civil Procedure

7

("Fed. R. Civ. P.") 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.

Rule 56 requires summary judgment to be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"An arbitral award under the Randolph-Sheppard Act is reviewed as an agency action under the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706." Premo v. Martin, 119 F.3d 764, 768 (9th Cir. 1997). Pursuant to the APA, the Administrative Decision is a final agency action, which can be held unlawful and set aside if it is found to be

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2).  The court must "review the whole record or those parts of it

cited by a party, and due account shall be taken of the rule of prejudicial error."  Id.

II.    Issues on Appeal

The issues on appeal are as follows:

1) Whether the RSA applies to federal property that is leased by the

federal government to a private entity and on which the government has no day-to-

day involvement or management, or employees;

2) Whether the RSA is limited to vending facilities located in

buildings; and

3) Whether the RSA authorizes an arbitration panel to award

monetary relief to either licensed blind vendors or a state for the vendors' benefit

when the federal government failed to comply with the RSA and the blind vendors

lost income.

DISCUSSION

I.    Application of the RSA to the Leased Premises

The purpose of the RSA is to provide "blind persons with

remunerative employment, enlarging the economic opportunities of the blind, and

stimulating the blind to greater efforts in striving to make themselves

self-supporting[.]"  20 U.S.C. § 107(a).  The RSA therefore requires that blind

vendors be given priority in the operation of vending facilities on any federal

property.  Id.; 20 U.S.C. § 107(b).  The RSA specifically states that

> [i]n authorizing the operation of vending facilities on
> Federal property, priority shall be given to blind persons
> licensed by a State agency as provided in this chapter;
> and the Secretary, through the Commissioner, shall, after
> consultation with the Administrator of General Services
> and other heads of departments, agencies, or
> instrumentalities of the United States in control of the
> maintenance, operation, and protection of Federal
> property, prescribe regulations designed to assure that-(1)
> the priority under this subsection is given to such
> licensed blind persons (including assignment of vending
> machine income pursuant to section 107d-3 of this title to
> achieve and protect such priority), and (2) wherever
> feasible, one or more vending facilities are established on
> all Federal property to the extent that any such facility or
> facilities would not adversely affect the interests of the
> United States.

20 U.S.C. § 107(b).

The term "vending facility" is defined as "automatic vending

machines, cafeterias, snack bars, cart services, shelters, counters, and such other

appropriate auxiliary equipment as . . . necessary for the sale of the articles or

services described in section 107a(a)(5) of this title and which may be operated by

blind licensees[.]"  20 U.S.C. § 107e(7).  The term "Federal property" "means any

building, land, or other real property owned, leased, or occupied by any

10

department, agency, or instrumentality of the United States[.]"  20 U.S.C. §

107e(3).

Defendant argues that the Administrative Decision was correct in

concluding that the RSA did not apply to the Leased Premises because the Navy

did not control the Leased Premises in the sense that it did not have control over

the day-to-day logistics of operating a vending facility, such as the hours of

operation, time for delivery of goods, and who could or could not enter the Leased

Premises.  Specifically, Defendant asserts that because the Navy relinquished day-

to-day management, operation, and security of those premises and has no

employees or personnel who conduct business there, the property falls outside of

the reach of the RSA.  Defendant argues that although the definition of the term

"Federal Property" is broad and appears to encompass the Leased Premises, other

provisions of the RSA, namely 20 U.S.C. §§ 107(b), 107a(c) and 107d-2(b)(2),

which pertain to the implementation of the priority for the blind vendor, indicate

that the priority applies only to property over which a federal entity exercises

control with respect to the maintenance, operation and protection of said property

in a day-to-day management.

As noted above, 20 U.S.C. § 107(b) states that the "Secretary, through

the Commissioner, shall, <u>after consultation with</u> the Administrator of General

Services and other heads of departments, agencies, or instrumentalities of the

United States <u>in control of the maintenance, operation, and protection</u> of Federal

property . . . ." (emphasis added).

> 20 U.S.C. § 107a(c) states that
>
> [t]he State licensing agency designated by the Secretary is authorized, <u>with the approval of</u> the head of the department or <u>agency in control of the maintenance, operation, and protection</u> of the Federal property on which the facility is to be located but subject to regulations prescribed pursuant to section 107 of this title, to select a location for such facility and the type of facility to be provided.

(emphasis added).  20 U.S.C. § 107d-2(b)(2) provides that "[t]he arbitration panel

convened by the Secretary to hear complaints filed by a State licensing agency

shall be composed of three members appointed as follows: . . . one individual,

<u>designated by</u> the head of the Federal department, agency, or instrumentality

<u>controlling</u> the Federal property over which the dispute arose[.]" (emphasis added).

When interpreting a statute, the court should consider various cannons

of construction.  One cannon provides that "[i]f the intent of Congress is clear, that

is the end of the matter; for the court . . . must give effect to the unambiguously

expressed intent of Congress." <u>Chevron U.S.A., Inc. v. Natural Res. Defense

Council, Inc.</u>, 467 U.S. 837, 842-43, (1984).  In addition, the court should give

effect, if possible, to "every clause and word of a statute[.]"  Chickasaw Nation v. United States, 534 U.S. 84, 85 (2001) (citation and internal quotation marks omitted).  The court should also "reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute[.]"  Id. (citation and internal quotation marks omitted).

When interpreting terms in a statute, "[a]s a rule, a definition which declares what a term 'means' . . . excludes any meaning that is not stated."  Colautti v. Franklin, 439 U.S. 379, 393 (1979) (citation, internal quotation marks and brackets omitted).  "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  Perrin v. United States, 444 U.S. 37, 42 (1979).  "Courts are not free to read into the language what is not there, but rather should apply the statute as written."  United States v. Murphy, 35 F.3d 143, 145 (4th Cir. 1994) (citation omitted).

Here, Defendant's arguments lack merit.  The definition of Federal Property is unambiguous and certainly covers the Leased Premises, as it is land which is "owned" by the Navy.  Two of the other provisions of the RSA cited by Defendant pertain to whom the Secretary must consult when implementing the blind vendor priority.  See 20 U.S.C. §§ 107a(c), 107(b).  This language requiring

13

the Secretary to consult with the department head or agencies in control of the

maintenance, operation and protection of the property at issue does not limit the

broad definition of Federal Property.  Indeed, if Congress wanted the blind vendor

priority to apply to only some federal property, it certainly knew how to limit the

definition to that urged by Defendant and could have done so in the definition

section.  Congress chose not to.  If this Court were to determine that the blind

vendor priority applies only to property over which a federal entity exercises

immediate control with respect to day-to-day maintenance, operation, and

protection, it would impose a limitation on the definition of Federal Property that is

not in the statute and make the term "owns" within that definition unnecessary.

See United States v. Smith, 155 F.3d 1051, 1057 (9th Cir. 1998) ("When . . . the

meaning of a word is clearly explained in a statute, courts are not at liberty to look

beyond the statutory definition.").

In addition, having a broad definition of Federal Property does not

render the language regarding consultation with agencies in control of

maintenance, operation, and protection superfluous.  It makes perfect sense that in

order to implement the priority, the Secretary would have to work with the federal

department or agency that is actually using and controlling the land.

As noted by Defendant, the RSA does not define the term "control." Defendant argues that the ordinary meaning of control over the maintenance and operation of property connotes day-to-day property management and upkeep. This argument, however, ignores the fact that by owning the property, the Navy has ultimate control over its operation and management because the Navy negotiated the terms of the lease. The Navy ultimately has the authority to decide not to lease the property unless certain terms are met. Specifically, the Navy can require that the lessee implement the blind vendor priority as a term of the lease and the fair-market value of the rent for the land would reflect this obligation of the lessee. Moreover, as acknowledged by defense counsel at the hearing, the Navy has ultimate control over the Leased Premises because visitors must pass through security to get to the property, the Navy could search those persons if it chose to, the Navy determines the overall hours of operation of the property, the Military Police patrol the area to provide security, and the leases provide for concurrent jurisdiction. Unquestionably, with these particular facts, the Navy retained control of the security and operations of the Leased Premises.

Finally, Defendant's argument regarding 10 U.S.C. 2814(c) and 10 U.S.C. § 2667, which authorize the Navy to lease property that is not needed for operations, lacks merit. "[R]epeals by implication are not favored. Only a clear

repugnancy between the old law and the new results in the former giving way and then only pro tanto to the extent of the repugnancy."  State of Ga. v. Pa. R. Co., 324 U.S. 439, 456-57 (1945).  These statutes in no way relieve the Navy from its obligations under the RSA, or make the RSA null and void.

In sum, it is abundantly clear that because the Navy owns the land, and retains ultimate control given that the land is within a military reservation, the property is subject to the RSA.  Therefore, the Navy violated the RSA by failing to require its lessees to comply with the RSA and by not giving blind vendors priority in the operation of vending facilities on the Leased Premises.  Accordingly, the Administrative Decision on this issue is contrary to law and is hereby reversed.

Plaintiff also listed as an issue on appeal the Panel's determination that the White Tent was not a building within the meaning of 34 C.F.R. § 395.31. (Administrative Decision at 12, ¶ 22.)  Defendant did not specifically address this issue in its answering brief.  This Court finds that the Panel erred in making this finding as the definition of vending facility in the statute includes "cart services, shelters, counters, and such other appropriate auxiliary equipment as . . . necessary for the sale of the articles or services[.]"  20 U.S.C. § 107e(7).  The White Tent certainly met this criteria when it was in use.  Accordingly, the RSA applies to the Halawa Landing property and the White Tent.

16

Plaintiff also complains about the Panel's finding that any issues involving a contemplated café at the U.S.S. Bowfin Museum are moot because there are no plans for a commercial kitchen.  (Administrative Decision at 12, ¶ 5.) Plaintiff states that the Navy should have complied with 34 C.F.R. § 395.31 before allowing the seating area and sale of food and beverages to be established. Defendant did not address this argument in its reply brief.  Although there is no evidence that the current food service facilities at the U.S.S. Bowfin Museum will expand to include a commercial kitchen, the evidence establishes that there exists vending facilities as defined by the RSA on the property.  See 20 U.S.C. § 107e(7). Accordingly, the Navy violated the RSA by not requiring its lessee to institute the bind vendor priority for such vending facility.

II.   Damages Under the RSA

Defendant asserts that even if Plaintiff prevails on its RSA claim, the Panel does not have authority to award damages from Defendant or the Navy.

20 U.S.C. § 107d-1 has two separate subsections regarding arbitration, sections (a) and (b).  20 U.S.C. § 107d-1 provides in full as follows:

(a) Hearing and arbitration

Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

(b) Noncompliance by Federal departments and agencies; complaints by State licensing agencies; arbitration

Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder (including a limitation on the placement or operation of a vending facility as described in section 107(b) of this title and the Secretary's determination thereon) such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

20 U.S.C. § 107d-2 is also broken down into two subsections, one

which applies to an arbitration panel "convened by the Secretary to hear grievances

of blind licensees," 20 U.S.C. § 107d-2(b)(1), and one which applies to "[t]he

arbitration panel convened by the Secretary to hear complaints filed by a State

licensing agency," 20 U.S.C. § 107d-2(b)(2).  Subsection (b)(1) discusses only the

appointment of the three member panel.  Subsection (b)(2) discusses the

appointment of a three member panel, but also contains the following language:

> If the panel appointed pursuant to paragraph (2) finds that
> the acts or practices of any such department, agency, or
> instrumentality are in violation of this chapter, or any
> regulation issued thereunder, the head of any such
> department, agency, or instrumentality shall cause such
> acts or practices to be terminated promptly and shall take
> such other action as may be necessary to carry out the
> decision of the panel.

20 U.S.C. § 107d-2(b)(2).

Relying on Premo, Plaintiff asserts that the Panel has authority to

award damages in this case.  In Premo, the Ninth Circuit held that "as a matter of

statutory construction, the Randolph-Sheppard Act gives arbitration panels the

authority to award compensatory relief."  Premo, 119 F.3d at 769.  "In drawing this

conclusion, courts have emphasized that the prevailing conception at the time the

Act was passed was that arbitral resolution of disputes involved awards of back

pay and other forms of compensatory relief."  Id. at 770 (citations omitted).

In Premo, the SLA for the State of California revoked a blind vendor

license issued to Ms. Martin that had permitted her to operate a snack bar at the

19

Post Office. 119 F.3d at 767.  Martin filed a complaint in arbitration alleging that the SLA violated the RSA "by failing to take adequate steps to ensure compliance by the Postal Service," and for terminating her vendor's license.  Id.  The administrative arbitration panel determined that the SLA violated the RSA "by refusing to secure the renovation of the vending facilities at Santa Ana, by failing to insist on assignment of income from competing vending machines to Martin, and by declining to take effective steps to prevent the Postal Service from renewing a contract with another vendor."  Id.  Because these failures resulted in Martin's financial difficulties, the panel "awarded Martin $379,025.05 in lost income and $70,898.65 in attorney's fees and costs. The panel also ordered the State to reinstate Martin's license, to restore her to a comparable vending facility, and to pay her at a rate of $5,731.94 per month until she [wa]s restored."  Id.

The Ninth Circuit held that "the Eleventh Amendment does not apply to Randolph-Sheppard arbitration proceedings and thus does not limit the authority of arbitration panels convened under the Act to award compensatory relief."  Id. at 769.  The Ninth Circuit also held that "the overwhelming implication of the Act is that participating states have waived their sovereign immunity to suit in federal court for the enforcement of such awards."  Id.

Defendant asserts that <u>Premo</u> is inapplicable here because that case involved a lawsuit against the SLA for its failure to enforce compliance with the RSA, whereas in this case the arbitration was against the Navy directly.  Defendant argues that the RSA has no provision for an award against a federal entity, and that the Panel only has the authority to declare a violation of the RSA, but may not impose a specific remedy.  Defendant relies on the Eleventh Circuit decision in <u>Ga. Dep't of Human Res. v. Nash</u>, 915 F.2d 1482 (11th Cir. 1990) and the Fourth Circuit decision in <u>Md. State Dep't of Educ. v. U.S. Dep't of Veterans Affairs</u>, 98 F.3d 165 (4th Cir. 1996), which were also cited by the Panel, for the holding that the Panel does not have authority to award damages against the Navy.  Finally, Defendant argues that the United States has sovereign immunity, which has not been clearly waived.

In <u>Nash</u>, the Eleventh Circuit discussed the differences between subsections (a) and (b) of 20 U.S.C. § 107d-1.  The Eleventh Circuit found that while subsection (a) gave the blind vendor a direct action against the SLA "[s]ubsection (b) . . . gives the blind licensee nothing; rather, it gives the state

agency authority to bring a complaint against a federal entity controlling property on which vending facilities are located. The procedures proscribed by these two subsections are similar, but different[.]" 915 F.2d at 1490.

The Eleventh Circuit also noted that section 107d-2 distinguished between arbitration under the two subsections of 107d-1, categorizing them as "grievances of blind licensees," and "complaints filed by a state licensing agency." Id. at 1491.  The court stated that the "make-up of the panels in both categories of cases represents the interests of the parties involved in the dispute[,]" and that "[t]he blind vendor is not represented on the subsection (b) panel, and the federal entity is not represented on the subsection (a) panel."  Id.  Although the SLA was represented on both panels, it played different roles depending upon which type of panel was convened.

The Eleventh Circuit then discussed the differences in the panels' remedial powers under the two sections.  The court noted that the additional language of subsection (b) specifically granted the panel

> authority to decide whether the federal entity's acts are in violation of the Act[] [but] . . . limits the panel's authority to that decision alone: although the panel may determine that a violation is occurring and may identify the discrete acts that are in violation, the statute does not authorize the arbitration panel to order the federal entity to take any remedial action. Rather, the statute expressly places the

22

> obligation of ending the violation on the federal entity
> itself.

Id. at 1492.

The court went on to note that there is no express limitation in subsection (a) arbitrations and that under that section the panel has "authority to impose remedies directly on the state licensing agency."  Id.  The Eleventh Circuit therefore held that "the subsection (b) panel . . . under the Act's express terms, has no remedial powers whatsoever.  It may determine that certain of the federal entity's acts violate the Act, but the Act leaves responsibility for remedying the violation to the federal entity itself."  Id.

The Fourth Circuit in Md. State Dep't of Educ. likewise held that "the plain language of § 107d-2(b)(2) limits the authority of an arbitration panel convened under § 107d-1(b) to a determination of whether the acts of the federal entity 'are in violation' of the substantive provisions of the Act."  98 F.3d at 169. "[T]he statute places the responsibility for ending the violation on the head of the federal entity and does not authorize a § 107d-1(b) arbitration panel to order the federal entity to take specific remedial action."  Id.

This Court finds the Fourth Circuit and Eleventh Circuit cases persuasive and finds that given the underlying factual circumstances in Premo, the

23

Ninth Circuit would follow the Fourth and Eleventh Circuits in its interpretation, and find that the RSA does not authorize an arbitration panel to award damages against a federal entity in a proceeding brought by the SLA.

Plaintiff and one Amicus Brief asserts that the RSA does not support the constrained result on the arbitration process, as suggested by Defendant, and that this is an absurd result because Congress took the discretionary compliance away from federal agencies by passing the RSA.

This argument has been considered and rejected by the Fourth Circuit. The Fourth Circuit found that not allowing the arbitration panel to award damages against a federal entity was not absurd as it was not "so gross as to shock the general moral or common sense."  98 F.3d at 171.  The Fourth Circuit stated that

> if a state licensing agency is dissatisfied with the response of a federal entity to an arbitration panel's decision, the state agency can file another complaint with the Secretary and have a second arbitration panel determine whether the federal entity's acts in response to the first decision bring it into compliance with the Act. Again, this solution may seem cumbersome, but it is not "so gross as to shock the general moral or common sense."

Id.

Again, this Court finds the Fourth Circuit's decision persuasive. Congress's intent with the RSA is clear.  If the SLA and blind vendors are

dissatisfied with the structure of the remedies in the statute, they should petition Congress to amend the statute.  Moreover, this argument ignores the fact that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will be strictly construed, in terms of its scope, in favor of the sovereign."  Gomez-Perez v. Potter, __ U.S. __, __, 128 S. Ct. 1931, 1942-43 (2008).  In addition, "[t]o sustain a claim that the [federal] Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."  Lane v. Pena, 518 U.S. 187, 192 (1996).  There is no clear expression of a waiver of sovereign immunity in the RSA, and Plaintiff has not argued that there is one.  See New Hampshire v. Ramsey, 366 F.3d 1, 21 (1st Cir. 2004) ("Section 107d-2(b)(2) does not expressly authorize an award of damages, nor does it expressly waive the federal government's immunity from damages.").

Plaintiff and one of the Amicus Briefs also cite to a Third Circuit case which in analyzing the RSA stated that "Congress was surely aware that arbitrators proceeding under the authority of the Federal Arbitration Act or under the authority of the Uniform Arbitration Act, as a matter of course awarded retrospective compensatory relief in appropriate cases."  Del. Dep't of Health and

<u>Soc. Servs., Div. for Visually Impaired v. U.S. Dep't of Educ.</u>, 772 F.2d 1123,

1136 (3rd Cir. 1985).  The Third Circuit also noted that

> there is no indication in the text of the legislation or in
> any legislative history suggesting that Congress used the
> term arbitration in any manner different from its
> conventional usage in other contexts such as the Federal
> Arbitration Act. No witness in hearings on S. 2581, and
> no member of Congress ever suggested that the scope of
> relief which could be awarded in these arbitration
> proceedings, agreed to by virtue of a state's voluntary
> participation in the Randolph-Sheppard program, was in
> any degree different than that available in other
> arbitration proceedings.

<u>Id.</u> at 1130-31.

The Third Circuit, however, did not discuss the statutory language and

the differences between the subsections of 20 U.S.C. §§ 107d-1 and 107d-2.  In

addition, that case involved a suit by the blind vendor against the SLA and

pertained to 20 U.S.C. § 107d-2(a).  <u>Id.</u> at 1136.  Thus, the statements by the Third

Circuit are applicable to a case brought against a SLA, as in <u>Premo</u>, but do not

necessarily apply here where the suit is by the SLA against a federal entity.

Therefore, this Court finds that the Panel was correct in determining

that it did not have authority to award damages against the Navy.

<u>CONCLUSION</u>

For the reasons stated above, the Court REVERSES IN PART AND AFFIRMS IN PART the administrative decision.  This Court REVERSES the administrative decision that the Randolph-Sheppard Act did not apply to the property at issue.  This Court AFFIRMS the administrative decision that the arbitration panel does not have authority to award damages against the Navy.  As the motion to dismiss raised the same arguments as the appeal, this Court DENIES Defendant's Motion to Dismiss AS MOOT.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 12, 2008.



_____
David Alan Ezra
United States District Judge

<u>State of Hawai'i, Department of Human Services vs. Untied States Department of Education, Rehabilitaiton Services Administration</u>, CV No. 08-00044 DAE-BMK; ORDER REVERSING IN PART AND AFFIRMING IN PART ADMINISTRATIVE ARBITRATION PANEL'S DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT