IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES,<br><br>            Plaintiff,<br><br>      vs.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, REHABILITATION SERVICES ADMINISTRATION,<br><br>            Defendant.<br>_____ | CV. NO. 08-00044 DAE-BMK |

ORDER: (1) SEVERING PLAINTIFF'S MOTION TO ENFORCE JUDGMENT FROM PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION; AND (2) DENYING PLAINTIFF'S MOTION TO ENFORCE JUDGMENT

On January 11, 2009, the Court heard Plaintiff's Motion. Susan Kern, Deputy Attorney General, appeared at the hearing on behalf of Plaintiff; Edric Ming-Kai Ching, Assistant U.S. Attorney, appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the Court **SEVERS** Plaintiff's Motion to Enforce Judgment from Plaintiff's Motion for Permanent Injunction; and **DENIES** Plaintiff's Motion to

Enforce Judgment. (Doc. # 60.)  The Court will address Plaintiff's Motion for Permanent Injunction in a separate order.

BACKGROUND

This matter involves enforcement of this Court's November 12, 2008 Order Reversing in Part and Affirming in Part Administrative Arbitration Panel's Decision (the "Arbitration Order").  This Court found, <u>inter alia</u>, that the U.S. Navy violated the Randolph-Sheppard Vending Stand Act, 20 U.S.C. §§ 107-107f (the "RSA"), by not requiring private companies that lease Navy land to comply with the RSA.  (Doc. # 57.)

The RSA "establishes a cooperative federal-state program that provides employment opportunities for the blind.  The [RSA] grants priority to blind persons who desire to operate vending facilities on federal property." <u>Premo v. Martin</u>, 119 F.3d 764, 766-67 (9th Cir. 1997).  The policies apply to blind persons licensed by a state licensing agency.  In this case, the state licensing agency is the State of Hawaii Department of Human Services, Department of Vocational Rehabilitation and Services for the Blind ("Plaintiff").

The Navy leases its Pearl Harbor Naval Base property to various private entities, including the Pacific Fleet Submarine Memorial Association, Inc., dba the USS Bowfin Submarine Museum and Park (the "Bowfin Museum").  In

1986, the Navy leased property near the Halawa landing to the Bowfin Museum for use as a submarine museum and related support facilities.  Located in the Bowfin Museum is a hot dog cart selling hot dogs, sandwiches, snacks, and beverages, and a shaded seating area for approximately 200 people.

Plaintiff, as the state licensing agency, is authorized to implement the program, to issue licenses to blind persons for operation of vending facilities, and to file a complaint with the U.S. Secretary of Education when there is a dispute over whether a federal agency has complied with the RSA.  See 20 U.S.C. §§ 107a, 107b, 107d-1(b).  Plaintiff filed a Complaint on February 6, 2006 against the U.S. Department of Education, Rehabilitation Services Administration ("Defendant") alleging that the Navy violated the RSA by allowing lessees to provide food, beverage, and bag services at the expense of two blind vendors' profits.

On November 12, 2008, this Court determined that the Navy has control over the property because the Navy can negotiate terms of the lease and require that the lessees implement the blind vendor priority as a term of the lease. (Arbitration Order at 15.)  The Navy "violated the RSA by failing to require its lessees to comply with the RSA and by not giving blind vendors priority in the operation of vending facilities on the Leased Premises."  (Id. at 16.)  Evidence established that there exists vending facilities at the Bowfin Museum as defined by

the RSA, 20 U.S.C. § 107e(7).  (Id. at 17.)  The Court also found that although the Navy violated the RSA, the arbitration panel did not have the authority to award damages against the Navy.  (Id. at 27.)  The Arbitration Order did not set a deadline within which the Navy was to comply.

According to Plaintiff, on or about May 19, 2009, changes were made in ticket distribution at the USS Arizona Memorial that resulted in the ticket lines being relocated from the visitor center to the front of the Bowfin Museum.  (Doc. # 60 at 7; Doc. # 60 Ex. 5.)  This move allegedly "resulted in a considerable increase in the amount of business the Bowfin Museum diverts from the business of the authorized blind vending facility."  (Doc. # 60 at 8.)

On October 30, 2009, Plaintiff filed a Motion to Enforce Judgment and for Permanent Injunction, attesting that the Navy had failed to require its lessee Bowfin Museum to comply with the Arbitration Order and requesting that the Court compel agency action unlawfully withheld.  (Doc. # 60.)  On December 21, 2009, Defendant filed an Opposition, asserting that the Navy is in compliance with the Arbitration Order.  (Doc. # 70.)  On December 28, 2009, Plaintiff filed a Reply. (Doc. # 72.)

At this hearing on this matter, counsel declined this Court's offer to grant additional time for settlement negotiations. Therefore, the Court hereby issues the order herein.

## DISCUSSION

Plaintiff seeks a permanent injunction and order requiring the Navy to: (1) institute the blind vending priority in the form of permit pursuant to 34 C.F.R. § 395.16; and (2) require its non-blind lessee to deliver the property to Plaintiff. (Mot. at 2.) According to Plaintiff, the Navy has not ensured that Bowfin Museum complies with the RSA, as mandated by the Court's Arbitration Order. Plaintiff contends that the Navy "continues to allow its lessee to operate a vending facility that diverts income from an authorized blind vending facility." (Id. at 6.) Plaintiff asks that this Court issue this order pursuant to the Court's authority to compel agency action unlawfully withheld or unreasonably delayed as conferred by Section 706 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706. The action allegedly "unlawfully withheld" is the Navy's execution of a permit pursuant to 34 C.F.R. § 395.16 and the Navy's imposing a requirement that its non-blind lessee deliver the Bowfin Museum's vending facility to Plaintiff. (Mot. at 10.)

Plaintiff's underlying purpose for making these requests is to "ensure that it has taken adequate steps to ensure that federal agencies are complying with the RSA." (Id. at 5.)

At the outset, the Court notes that a motion to enforce judgement and a motion for permanent injunction are more properly filed as two separate motions, because distinct issues are raised by and distinct standards of review apply to each request. The Court will therefore address the motions separately. The Court herein rules on Plaintiff's Motion to Enforce Judgment.

I.     Standard of Review

The RSA designates the judicial review provisions of the APA as the standard for evaluating an arbitration award. See 20 U.S.C. § 107d-2(a); Premo, 119 F.3d at 768-69. Therefore, the Court's review of the Navy's actions is limited by the standards set in the APA. See City of Sausalito v. O'Neill, 386 F.3d 1186, 1205 (9th Cir. 2004).

An agency's "failure to act," such as the Navy's alleged failure to abide by this Court's Arbitration Order, is reviewable only if the agency failed to take a specific action that was required by law. Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004). The only agency action that can be compelled is action legally required and "unlawfully withheld." Id. at 63; 5 U.S.C. § 706(1).

6

In this case, a discretionary function is implicated, and therefore the agency's action is subject to the arbitrary, capricious, or abuse of discretion standard under Section 706 of the APA. See 5 U.S.C. § 706(2)(A); Premo, 119 F.3d at 768. The RSA requires the federal agency to give priority to licensed blind vendors but does not dictate a specific method or action that an agency should take to do so. See 20 U.S.C. § 107(b). There are both blind and non-blind vending facility operators on federal property, both in existence before this grievance was filed. The Navy must determine how to give the blind vending facilities priority, particularly when events arguably out of its control, including relocation of ticketing lines due to construction, impact the blind vendors.

II.   Compliance with the Arbitration Order

No specific conditions have been placed, either by the RSA or this Court's Arbitration order, on how the Navy is to comply.[1] The Arbitration Order did not specifically require the Navy to issue a particular permit or take a particular action within a particular time frame.[2] The Court simply reversed the arbitration

---

[1] Neither party disputes that the Navy may be held to comply with the Arbitration Order, despite the fact that the Navy is not a named party to this case. See Fed. R. Civ. P. 71.

[2] Contrary to Plaintiff counsel's assertion during the hearing, the Arbitration Order did not specifically order any party to institute any particular blind vending facility at the Bowfin.

decision, which had held that the RSA itself did not apply to the property. The Court instead found that the RSA did apply. Because the RSA did apply to the property, the Navy was in violation of the RSA's requirements by not granting priority to blind persons who desired to operate vending facilities on federal property. Plaintiff mischaracterizes this Court's Arbitration Order when it implies that any particular action on the part of the Navy was ordered.

If the acts or practices of an agency are in violation of the RSA, Section 107d-2(b) requires the head of the agency to "cause the violation to be terminated promptly, and to take other action required to carry out the arbitration panel's decision." 20 U.S.C. § 107d-2(b). Plaintiff asks this Court to direct the head of the Navy to cause the violation to be terminated and to take other action as necessary to carry out the Arbitration Order. (Mot. at 13-14.)

Plaintiff raises two main points to demonstrate that the Navy is not in compliance with the Arbitration Order. First, Plaintiff argues that the Navy has taken no steps to bring the Bowfin Museum into compliance. The Court addresses this below. Second, the ticketing line for visitors was relocated closer to the Bowfin Museum vending area than to the blind vendors' area. Plaintiff places great emphasis on the fact that the line was relocated further from the blind vendor facility and on the amount of money the operators have allegedly lost.

8

The reasons for the May 19, 2009 relocation of the ticket line are significant. Ticket distributions at the USS Arizona Memorial are handled by the National Park Service, Department of the Interior ("NPS"). (Mot. at 7; Mot. Ex. 5.) Because park tickets are issued on a first-come, first-serve basis, visitors typically assemble early and in long lines to obtain tickets. The existing visitor center, however, is under construction. Because the long lines might be at an unsafe proximity to the ongoing construction, the NPS moved the queue lines in front of the Bowfin Museum where there are public assembly areas and facilities for issuing tickets. (Mot. Ex. 5.) This arrangement is temporary.[3]  (Id.) According to Plaintiff, the entrance to the new visitor facility will be opened on January 15, 2010, and will be closer, more visible, and more accessible to the Bowfin Museum than to the blind vending facilities. (Mot. at 8-9.) Plaintiff does not state how much closer the line will be to the Bowfin Museum.

In their declarations, Brian Tamashiro and Clifford Chong (the blind vendors) state that the result of the relocation of the ticket queue has been a steady decline in sales as money is diverted from their facility to the facility located at the Bowfin Museum. (Tamashiro Mot. Decl. ¶ 3.) Presumably, this is because visitors

---

[3] At the hearing on this matter, counsel acknowledged that this move is temporary.

will purchase food from the vendors while waiting in line.  The blind vendors have purportedly been forced to cut employee hours and days.  (Id. ¶ 4.)  For instance, sales in September 2009 were down 45% from sales in September 2008, sales in June 2009 were down 34% from sales in June 2008, and sales in May 2009 were down 29% from sales in May 2008.  (Id. ¶ 5.)  They admit, however, that it is likely that some of the lost revenue is due to the decline in visitor arrivals.  (Id.)

It is difficult to discern what result Plaintiff anticipates from presenting these points about the ticket queue.  It was the NPS, not the Navy, that moved the location of the queue.  Plaintiff does not ask this Court to order that the ticket queue be relocated, nor is it feasible for this Court to do so.  Plaintiff also does not cite authority standing for the proposition that the RSA gives the blind vendors priority over park management and visitor safety, which are the apparent reasons for the queue relocation.  To the contrary, the RSA itself provides that blind vending facilities should, "wherever feasible," be "established on all Federal property to the extent that any such facility or facilities would not adversely affect the interests of the United States."  20 U.S.C. § 107(b)(2).  This by its very nature involves a discretionary function.

Plaintiff further argues that the Navy "unlawfully withheld" two actions:  execution of a permit pursuant to 34 C.F.R. § 395.16; and imposition of a

requirement that its non-blind lessee deliver the Bowfin Museum's vending facility to Plaintiff. (Mot. at 10.) Plaintiff's argument fails for several reasons. First, as discussed above, Plaintiff does not couch its argument within the correct standard of review. How the Navy will comply with its obligations under the RSA is a discretionary function subject to the arbitrary and capricious standard of section 706(2)(A) of the APA. Second, there is no explicit time frame required for the issuance of the license or "action" by Defendant, and Plaintiff does not offer direct support for its assertion that Defendant and the Navy are not acting "promptly." In fact, it appears that since issuance of the Arbitration Order in 2008, the Navy has taken steps to comply with respect to all applicable property and has reached tentative agreements with respect to the Pacific Air Museum and the Moanalua Shopping Center. (Reply at 3.) As to the Bowfin Museum, the Navy has engaged in both out-of-court negotiations and an in-court settlement conference before Magistrate Judge Chang, which so far have not been successful.[4] (Opp'n at 6-7.) The Court would be hard-pressed to say that the Navy has not taken action to come

---

[4] Plaintiff also mentions that Bowfin Museum filed a separate lawsuit in this Court, contending that Bowfin Museum is not subject to the RSA. (Mot. at 5.) Bowfin Museum is not a party to the instant case or motion and does not speak on behalf of Defendant or the Navy, and therefore Bowfin Museum's position is inapplicable here. The Court denied Bowfin Museum's motion to intervene or to consolidate this case with the separate case filed by Bowfin Museum. (Doc. # 71.)

into compliance.  The mere fact that this Court determined the Navy was in violation of the RSA does not, as Plaintiff seems to assume, immediately require that certain actions be taken at certain times and in a certain way.  This is particularly true when, as here, the applicable statute does not set any particular time frames.

For these reasons, Plaintiff's motion is premature.  The original arbitration panel found that the RSA did not apply to the federal property at all.  This Court's Arbitration Order reversed that portion of the panel's decision and determined that the RSA did apply.  Since this Court's order, the Navy has taken steps to come into compliance, as described above.  Neither Defendant nor the Navy is disputing that the RSA applies, and neither have sought an appeal or sought to enjoin this Court's order.  The RSA mandates that blind vending facilities be prioritized, but there has not yet been any determination as to whether the changed circumstances warrant invocation of that priority over existing vendors.

Should Plaintiff believe, as it apparently does, that the Navy is not in compliance with the RSA now that the parties are informed that the RSA does in fact apply, Plaintiff may file a complaint with the Secretary and submit the matter to an arbitration panel.  20 U.S.C. § 107d-1(b).  The arbitration panel's review may

then be subject to judicial review by this Court.  Plaintiff's attempt to somehow preemptively declare the Navy in violation based on this Court's order, which did not expressly require the Navy to take any particular action, is misplaced and premature.

Finally, the Court will disregard the argument concerning lease terms raised by Plaintiff for the first time in its Reply.  Plaintiff submits Bowfin Museum's lease and attempts to rely on certain language in that lease to show that the Navy can "immediately enforce the arbitration order."  (Reply at 4.)  No mention of the lease terms is made in either the original Motion or Defendant's Opposition.  Pursuant to Local Rule 7.4, the Court must disregard any arguments raised for the first time in a Reply.  In this instance, it would be particularly prejudicial to Defendant should this Court consider the lease terms, as Defendant has not had an opportunity to brief an opposing argument.

Plaintiff has not demonstrated that Defendant is in violation of this Court's Arbitration Order.  Accordingly, Plaintiff's Motion to Enforce Judgment is DENIED.

CONCLUSION

For the reasons stated above, the Court SEVERS Plaintiff's Motion to Enforce Judgment from Plaintiff's Motion for Permanent Injunction; and DENIES Plaintiff's Motion to Enforce Judgment.  The Court will address Plaintiff's Motion for Permanent Injunction in a separate order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 12, 2010.



_____
David Alan Ezra
United States District Judge

State of Hawaii v. U.S. Department of Education, CV No. 08-00044 DAE-BMK; ORDER: (1) SEVERING PLAINTIFF'S MOTION TO ENFORCE JUDGMENT FROM PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION; AND (2) DENYING PLAINTIFF'S MOTION TO ENFORCE JUDGMENT